IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANA MARIE F.,[1]                          3:19-cv-01429-BR

       Plaintiff,                      OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

**BETSY R. SHEPHERD**
524 Riverwalk Manor Dr.
Dallas, GA  30132
(505) 480-5630

      Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

--------------------

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**ERIN F. HIGHLAND**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2495

       Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Dana Marie F. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

      On July 10, 2015, Plaintiff protectively filed her application for DIB benefits and on August 17, 2015, Plaintiff protectively filed her application for SSI benefits.  Tr. 15,

268-74, 277-83.[2]  Plaintiff alleges a disability onset date of December 22, 2010.  Tr. 15, 275-76.  Plaintiff's applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on February 2, 2018.  Tr. 34-78. Plaintiff and a vocational expert (VE) testified at the hearing. Plaintiff was not represented by an attorney at the hearing.

On August 16, 2018, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 15-26.  Plaintiff requested review by the Appeals Council.  On July 7, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On September 6, 2019, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on January 14, 1965.  Tr. 25, 268, 277. Plaintiff was 45 years old on her alleged disability onset date.

---

[2] Citations to the official Transcript of Record (#11) filed by the Commissioner on January 22, 2020, are referred to as "Tr."

Tr. 25.  Plaintiff has at least a high-school education.
Tr. 25.  Plaintiff has past relevant work experience as an
office manager and secretary/meeting planner.  Tr. 18, 24.

Plaintiff alleges disability due to migraines; chronic
pain in her spine, legs, and feet; "HEP"; joint pain; spinal
fusion; bulging discs; high blood pressure; depression; and
"cardio-vegal - heart races, dizzy, faint."  Tr. 105.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 21-24.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when
there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the

5 - OPINION AND ORDER

Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*,
648 F.3d at 724.  The criteria for the listed impairments, known
as Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

    If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

    At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

    If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in

the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here
the burden shifts to the Commissioner to show a significant
number of jobs exist in the national economy that the claimant
can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d
1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this
burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines (or the grids) set forth in the
regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If
the Commissioner meets this burden, the claimant is not
disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff engaged in substantial
gainful activity from July 2013 through December 31, 2014, and
for some time in 2017, but Plaintiff has not otherwise engaged
in substantial gainful activity since December 22, 2010,
Plaintiff's alleged disability onset date.  Tr. 18.

At Step Two the ALJ found Plaintiff has the severe
impairments of degenerative disc disease, olecranon bursitis,
small joint effusion and synovitis, intermittent migraines,
polyarthritis, asthma, and history of left-knee arthroscopic

patellar chondroplasty.  Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 20.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:  can occasionally lift and carry 20 pounds; can frequently lift and carry 10 pounds; can sit six hours in an eight-hour workday; can stand or walk a total of six hours in an eight-hour workday; can push and pull as much as she can lift and carry; can occasionally climb ramps, stairs, ladders, and scaffolds; can occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to hazards such as unprotected heights, workings with heavy machinery, and operating a motor vehicle; should avoid airborne irritants such as dust, fumes, and gases; and should avoid concentrated exposure to extreme cold.  Tr. 20.

At Step Four the ALJ concluded Plaintiff is able to perform her past relevant work as a secretary/meeting planner and office manager.  Tr. 24.

At Step Five the ALJ found Plaintiff can also perform other jobs that exist in the national economy such as assembler of electrical accessories, routing clerk, and office helper.

Tr. 25-26.  Accordingly, the ALJ found Plaintiff is not
disabled.  Tr. 26.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to
provide clear and convincing reasons for discounting Plaintiff's
subjective symptom testimony, (2) failed to provide legally
sufficient reasons for discounting the lay-witness statements of
Plaintiff's parents, and (3) failed to include all of
Plaintiff's limitations in his hypothetical to the VE.

**I.    The ALJ did not err when he discounted Plaintiff's
       subjective symptom testimony.**

Plaintiff contends the ALJ erred when he failed to provide
clear and convincing reasons for discounting Plaintiff's
subjective symptom testimony.

### A.    Standards

The ALJ engages in a two-step analysis to determine
whether a claimant's testimony regarding subjective pain or
symptoms is credible.  "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  *Garrison v.
Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter*

10 - OPINION AND ORDER

*v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The
claimant need not show her "impairment could reasonably be
expected to cause the severity of the symptom she has alleged;
she need only show that it could reasonably have caused some
degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."
*Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear
and convincing reasons for doing so." *Garrison*, 759 F.3d at
1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)(same).  General assertions that the
claimant's testimony is not credible are insufficient.  *Parra v.
Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must
identify "what testimony is not credible and what evidence
undermines the claimant's complaints."  *Id*. (quoting *Lester v.
Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.    Analysis**

Plaintiff testified she experiences foot pain and dizziness, which sometimes prevents her from driving.  Tr. 42. Her ankles swell and she needs to use a crutch to walk during such swelling and pain.  Tr. 44-45.  Plaintiff also experiences pain in her fingers, which makes it difficult to type, and she cannot look at a computer screen for long periods because it triggers migraines.  Tr. 46-47.  She testified lights aggravate her migraines, and her pain becomes worse after six hours of activity.  Tr. 51, 59.  Plaintiff also stated her hearing is affected when her ears swell, and she also experiences memory and cognitive deficits due to lack of sleep caused by her pain. Tr. 59, 64.

The ALJ found Plaintiff's alleged symptoms are inconsistent with her work history.  Tr. 21.  For example, Plaintiff testified she stopped working in 2010 as assistant to the mayor of Wood Village, Oregon, because of political issues, but she would have continued to work there if she had not been fired.  Tr. 52.  In addition, from 2013 to 2015 Plaintiff worked at a part-time job from home for 18 hours per week.  Tr. 53. Plaintiff testified although she experienced physical difficulties during this time, the job ended because the

12 - OPINION AND ORDER

organization she worked for ran out of money to pay her.
Tr. 53.  In 2017 Plaintiff had two part-time jobs.  Tr. 54-55.
The ALJ noted Plaintiff's employment in 2010 did not end due to
any disability and the earnings from Plaintiff's part-time jobs
were indicative of substantial gainful activity, the jobs were
performed after Plaintiff's alleged disability onset in 2010,
and the jobs did not end due to Plaintiff's impairments.
Tr. 21.

The fact that a claimant stops work for reasons other
than her impairments is a sufficient basis to disregard her
symptom testimony.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th
Cir. 2001).  In addition, the performance of part-time work can
be a legitimate reason to discount a claimant's assertion of
disability.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,
1227 (9th Cir. 2009).  The fact that a claimant performs
substantial gainful activity after her alleged onset date is
also a legitimate basis for finding the claimant's testimony
regarding the extent of her limitations is not fully credible.
*Gartzke v. Colvin*, 129 F. Supp. 3d 1040, 1049-50 (D. Or.
Sept. 3, 2015).

The ALJ also concluded Plaintiff's testimony was not
supported by the medical record.  Tr. 21.  For example,

Plaintiff testified her ears become inflamed and affect her
hearing.  Tr. 58-59.  The ALJ, however, indicated treatment
records consistently showed Plaintiff's hearing was intact and
that there was not any evidence of hearing difficulties.
Tr. 21, 669, 882, 950, 1013, 1080, 1142, 1193.  Plaintiff also
testified she could not work due to pain in her legs and back,
which made it difficult for her to move, and experienced joint
pain in her fingers, ankles, and feet.  Tr. 42-43, 47, 58-59.
The ALJ, however, noted musculoskeletal examinations indicated
Plaintiff did not have difficulty moving and had normal range of
motion, normal gait, and normal station.  Tr. 969, 1052, 1211,
1222, 1288.  For example, in September 2015 Plaintiff was
evaluated by Kevin P. Khaw, M.D., a rheumatologist, for joint
pain and swelling.  Tr. 883.  Dr. Khaw noted mild diffuse
swelling of the dorsal aspect of Plaintiff's left foot.
Tr. 883.  In September 2015 Plaintiff reported pain without
swelling of her left ankle.  Tr. 900.  In December 2015 and
March 2016 Plaintiff reported her joints were feeling better and
that she had not experienced any flare-ups since September 2015.
Tr. 941, 1111.  In April 2016 Plaintiff told Dr. Khaw that her
foot pain and swelling had resolved.  Tr. 1101.  In June 2017
Plaintiff stated her joint pain and swelling were "better and

14 - OPINION AND ORDER

calmer" and that she did not have swollen joints.  Tr. 1138.  In
June 2017 Plaintiff saw Marcia A. Friedman, M.D., another
rheumatologist.  Tr. 1129.  Dr. Friedman noted Plaintiff's
joints were not swollen or tender, Plaintiff's range of motion
was normal, and Plaintiff's strength in her arms and legs was
normal.  Tr. 1132.

        Finally, Plaintiff testified she experienced disabling
headaches that caused impaired vision and focus.  The ALJ
concluded there was not any evidence in the record of visual
limitations as a result of Plaintiff's intermittent migraines.
Tr. 23.  For example, the ALJ noted in January 2013 Plaintiff
was evaluated by Shame Kim, M.D., for complaints of eye pain and
headaches.  Tr. 648.  Dr. Kim diagnosed dry-eye syndrome.
Tr. 650.  In April 2014 Plaintiff was referred to Howard Taylor,
M.D., a neurologist, regarding complaints of headaches triggered
by light.  Tr. 668.  Dr. Taylor diagnosed "migraine phenomena,"
but he did not recommend any further treatment.  Tr. 669.
In September 2015 Robert Chestler, M.D., a treating
ophthalmologist, indicated Plaintiff did not have any visual
disability and that there was not any reason she could not
perform any work-related activity.  Tr. 877.  In May 2016
Plaintiff again complained of headaches triggered by light, but

Arthur Gaskell, M.D., Plaintiff's treating physician, recommended treatment of these symptoms with diet restrictions, regular activity, and rest.  Tr. 1094.

On this record the Court finds the ALJ did not err when he discounted Plaintiff's subjective symptom testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  The ALJ did not err when he discounted the lay-witness testimony of Plaintiff's parents.

Plaintiff contends the ALJ erred when he failed to provide legally sufficient reasons for discounting the lay-witness statements of Cheryl and David F., Plaintiff's parents.

### A.  Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly

16 - OPINION AND ORDER

discredited testimony of a claimant. *Bayliss v. Barnhart*, 427
F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*,
493 F. App'x 866 (9th Cir. 2012).

**B.   Analysis**

David F., Plaintiff's father, testified at the hearing
that Plaintiff has good days when she can work and other days
when she spends the whole day in bed.  Tr. 73.  He also
testified Plaintiff could not tolerate bright lights and could
not handle a job consistently.  Tr. 74.  David F. stated
Plaintiff goes directly to bed when she returns home from her
part-time job.  Tr. 74.

Cheryl F., Plaintiff's mother, testified Plaintiff's
pain level keeps her from work on many days.  Tr. 74.  She also
noted Plaintiff did not consistently help with chores around the
house.  Tr. 74.  In an April 2013 Function Report Cheryl F.
stated Plaintiff cannot use a computer due to eye strain and
migraine headaches, cannot sit for long periods due to back and
leg pain, and is limited in her ability to perform household
chores.  Tr. 333-35.  She also noted Plaintiff's ability to
lift, to bend, to stand, to walk, to sit, to see, to complete
tasks, to concentrate, and to follow instructions is affected by
her condition.  Tr. 338.  In another Function Report in August

2015 Cheryl F. stated Plaintiff is able to do activities at home only in "short bursts," often cancels plans because of her symptoms, is unable to drive, and uses crutches when her feet are swollen.  Tr. 391-96.

The ALJ concluded these statements by Plaintiff's parents were not consistent with the medical record.  Tr. 23-24. For example, the ALJ stated there was not any evidence in the record that it was medically necessary for Plaintiff to stay in bed for days, that Plaintiff had blurred vision, that Plaintiff reported side-effects from her medications, or that Plaintiff had memory deficits or difficulty following instructions. Tr. 23-24.  Although the ALJ acknowledged Plaintiff had some exertional limitations, the ALJ concluded the degree of limitations described by Plaintiff's parents was not consistent with the medical record, which showed full upper-extremity strength, normal gait, and normal station.  Tr. 24.

The testimonies of Cheryl and David F. are consistent with Plaintiff's testimony regarding her symptoms.  As noted, the Court has concluded the ALJ provided legally sufficient reasons supported by substantial evidence in the record for discounting Plaintiff's testimony.  For the same reasons the Court concludes on this record that the ALJ did not err when he

discounted the lay-witness testimony of Plaintiff's parents
because the ALJ provided germane reasons for doing so.

**III. The ALJ properly included Plaintiff's limitations in the
hypothetical posed to the VE.**

Plaintiff contends the ALJ failed to include in the
hypothetical to the VE Plaintiff's limitations based on her
migraines as assessed by Plaintiff's treating physicians and
supported by Plaintiff's testimony and the testimony of the lay
witnesses.  For example, Plaintiff testified her migraines were
triggered by exposure to light and by looking at computer
screens.  Tr. 54.  Dr. Kim recommended she avoid reading and
looking at computer screens.  Tr. 654.  The ALJ, however, did
not include any limitation regarding visual ability in his
hypothetical to the VE, but the ALJ noted in his decision that
Dr. Taylor, a treating physician, had diagnosed "migraine
phenomena" but he did not recommend any further treatment;
Dr. Chestler, a treating ophthalmologist, opined Plaintiff did
not have any visual disability; and Dr. Gaskell, Plaintiff's
treating physician, recommended treatment of Plaintiff's
migraine symptoms with diet restrictions, regular activity, and
rest.  Tr. 23, 24, 669, 1094.

As noted, the Court has determined the ALJ provided legally
sufficient reasons for discounting Plaintiff's subjective

complaints about her symptoms, properly evaluated the medical evidence, and provided germane reasons for discounting the lay-witness testimony of Plaintiff's parents.  Accordingly, the Court concludes the ALJ did not err when he did not include limitations based on such testimony in his hypothetical posed to the VE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 3rd day of September, 2020.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge